# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

SWEETFROG ENTERPRISES, LLC,
10800 Midlothian Turnpike, Suite 300
Richmond, Virginia 23235

                Plaintiff,

           v.

SDG PARTNERS, LLC,

Serve:  James Sciaretta, Registered Agent
           4320 Village Club Drive
           Powell, Ohio  43065

JAMES SCIARETTA
4320 Village Club Drive
Powell, Ohio  43065

JOYCE SCIARETTA
4320 Village Club Drive
Powell, Ohio  43065

                Defendants.

_____/

Civil Action No.: 3:15cv00274

**FILED**

MAY - 4 2015

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## COMPLAINT

This is an action for trademark infringement, unfair competition and breach of contract arising out of the defendants' continued unauthorized use of the plaintiff's trademarks and service marks in the operation of a frozen yogurt shop after the termination of the license agreement between the parties.  The plaintiff seeks a declaratory judgment, their damages, and preliminary and permanent injunctive relief.

The defendant SDG Partners, LLC ("SDG"), and its owners, defendants James Sciaretta and Joyce Sciaretta, operated a SWEETFROG frozen yogurt shop at Polaris Fashion Mall in Columbus, Ohio and sold frozen yogurt under trademarks owned by plaintiff SweetFrog

Enterprises, LLC ("SweetFrog").  In 2013, the defendants began failing to pay royalties to SweetFrog related to their sale of SWEETFROG frozen yogurt at their shop, as required by the license agreement between the parties.  Because the defendants failed to cure these defaults after SweetFrog notified them of the defaults, SweetFrog terminated the license agreement.

Despite the termination of the license agreement and their rights to use the SWEETFROG proprietary marks and trade dress and to sell SWEETFROG frozen yogurt, SDG and the Sciarettas have continued to operate their formerly-licensed frozen yogurt shop under the SWEETFROG marks; they are holding themselves out to the public as a legitimate, licensed seller of SWEETFROG frozen yogurt, and are selling substandard frozen yogurt products which they are falsely representing as genuine and authentic SWEETFROG frozen yogurt using SweetFrog's proprietary recipes.  The defendants' continued operation of their frozen yogurt shop under the SWEETFROG marks and unauthorized sale of counterfeit frozen yogurt using the SWEETFROG name poses a threat to the goodwill of SweetFrog.  Accordingly, SweetFrog seeks injunctive relief to protect its goodwill, its other licensees and consumers, as well as declaratory and monetary relief.

## THE PARTIES

1.      Plaintiff SweetFrog Enterprises, LLC ("SweetFrog") is a Virginia limited liability company with its principal place of business in Richmond, Virginia.

2.      On information and belief, defendant SDG Partners, LLC is a Virginia limited liability company with its principal place of business in Columbus, Ohio.

3.      On information and belief, defendant James Sciaretta is a citizen of Ohio, an owner of SDG, and the managing member of SDG.

4.      On information and belief, defendant Joyce Sciaretta is a citizen of Ohio and an owner of SDG.

## JURISDICTION AND VENUE

5.      This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and the contracts between the parties.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02 and 15 U.S.C. §§ 1116 and 1121.

7.      This Court has jurisdiction over the defendants because SDG is a Virginia limited liability company and the Sciarettas have had sufficient contact with Virginia to satisfy the Virginia long-arm statute, § 8.01-328.1(A).

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## THE SWEETFROG FROZEN YOGURT SHOP SYSTEM

9.      SweetFrog, formerly known as Imagination Enterprises, Inc., is the licensor of the SWEETFROG trademarks and frozen yogurt products. SweetFrog owns the federally-registered SWEETFROG and SWEETFROG PREMIUM FROZEN YOGURT trademarks and service marks and other marks (the "SWEETFROG Marks"), and has licensed others to use the SWEETFROG Marks in connection with the operation of frozen yogurt shops and the sale of SWEETFROG frozen yogurt.

10.     Pursuant to a license agreement with its subsidiary, SFF, LLC ("SFF"), SweetFrog licenses SFF the right to operate and to franchise others to operate frozen yogurt shops using the SWEETFROG Marks. Franchised and licensed SWEETFROG frozen yogurt shops are licensed to offer distinctive frozen yogurt, novelties, and confections and related items

to the public using the SWEETFROG Marks ("Licensed Products").   As a result, the

SWEETFROG Marks have come to identify, in the public mind, these Licensed Products and the

services made available in licensed SWEETFROG frozen yogurt shops.

      11.    The SWEETFROG Marks include the following trademark and service marks

registered in the United States Patent and Trademark Office:

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| SWEETFROG | 3,992,399 | July 12, 2011 | Frozen yogurt in International class 30. |
| SWEETFROG & Design  | 4,182,090 | July 31, 2012 | Restaurant services in International class 43. |
| SWEETFROG PREMIUM FROZEN YOGURT & Design  | 4,218,945 | October 2, 2012 | Frozen yogurt in International class 30.<br><br>Restaurant services in International class 43. |
| SWEETFROG | 4,102,511 | February 21, 2012 | Restaurant services in International class 43. |
| SWEETFROG & Design  | 4,386,679 | August 20, 2013 | Frozen yogurt in International class 30.<br><br>Restaurant services in International class 43. |

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| SWEETFROG & Design  | 4,390,771 | August 27, 2013 | Restaurant services in International class 43. |
| SWEETFROG & Design  | 4,390,772 | August 27, 2013 | Restaurant services in International class 43. |
| SWEETFROG | 4,431,150 | November 12, 2013 | Retail store services featuring ice cream for consumption off the premises; self-serve frozen yogurt shop services in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |
| SWEETFROG PREMIUM FROZEN YOGURT & Design  | 4,431,157 | November 12, 2013 | Retail store services featuring ice cream for consumption off the premises; self-serve frozen yogurt shop services in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |
| SWEETFROG PREMIUM FROZEN YOGURT & Design  | 4,431,158 | November 12, 2013 | Retail store services featuring ice cream for consumption off the premises; self-serve frozen yogurt shop services in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| SWEETFROG & Design  | 4,386,874 | August 20, 2013 | Self-serve frozen yogurt shop services; ice cream shop services, namely, retail store services featuring ice cream for consumption off the premises in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |
| SWEETFROG & Design  | 4,390,965 | August 27, 2013 | Self-serve frozen yogurt shop services; ice cream shop services, namely, retail store services featuring ice cream for consumption off the premises in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |
| SWEETFROG & Design  | 4,390,966 | August 27, 2013 | Self-serve frozen yogurt shop services; ice cream shop services, namely, retail store services featuring ice cream for consumption off the premises in International class 35.<br><br>Ice cream shop services in the nature of a restaurant in International class 43. |
| SWEETFROG | 4,637,921 | November 11, 2014 | Frozen yogurt; confectionery ices; ice creams in International class 30.<br><br>Ice cream shop services, namely, retail store services featuring ice cream; self-serve frozen yogurt shop services; import and export agencies; sales promotion services; procurement services, namely, procurement of frozen yogurt, confectionery ices and ice creams for others in International class 35. |

Each of these registrations is valid and fully enforceable.

12.     In addition to using the SWEETFROG Marks to identify their franchised or licensed frozen yogurt shops, SWEETFROG licensees and franchisees are licensed to sell Licensed Products in accordance with SweetFrog's detailed standards, specifications and methods relating to sources of supply, ingredients, preparation, and recipes. SWEETFROG licensees and franchisees are also authorized to use SweetFrog's distinctive trade dress in operating their licensed shops.

## THE LICENSE AGREEMENT BETWEEN THE PARTIES

13.     On February 21, 2012, SweetFrog (then known as Imagination Enterprises, Inc.) and SDG entered into a license agreement (the "License Agreement") pursuant to which SDG was licensed to use the SWEETFROG Marks to sell Licensed Products at a frozen yogurt shop at Polaris Fashion Mall, 1065 Gemini Place, Unit #8, Columbus, Ohio (the "Shop"). A true and correct copy of the License Agreement is attached hereto as Exhibit 1.

14.     Pursuant to Sections 1.1 and 11.1 of the License Agreement, unless earlier terminated, SDG was licensed to manufacture and market Licensed Products at the Shop using SweetFrog's proprietary recipes for a period of 10 years from the date of the License Agreement (or February 21, 2022).

15.     Pursuant to Section 2 of the License Agreement, SDG has certain payment obligations to SweetFrog, including royalty fees equal to the greater of $1,000 per month or five percent of SDG's gross sales of Licensed Products per month. Payments from SDG are to be made monthly by the fifth day of the month for the prior month. SDG is also required to pay interest if its payments are five days overdue.

16.     Pursuant to Section 11.2 of the License Agreement, if SDG defaults on its payment obligations, and fails to cure that default within (15) days of the payment due date, SweetFrog may terminate the License Agreement immediately and without further notice to SDG.

17.     Pursuant to Section 13.1 of the License Agreement, SDG and Sweetfrog agreed that:

> In the event of a dispute between the parties hereto arising out of or related to the Agreement or any of the related agreements referred to herein or contemplated hereby, except for 1) an action by Licensor to collect payments due or to enforce Section 7 (Indemnification) of this Agreement or 2) where injunctive relief is reasonably necessary to prevent immediate damage to the aggrieved party, the parties hereby agree to utilize the arbitration procedure specified in this Section.

18.     Pursuant to Section 13.7 of the License Agreement (which should be numbered 14.7), SDG agreed that injunctive relief and specific performance would be available remedies for SweetFrog for any breach of the License Agreement.

## SDG'S DEFAULTS UNDER THE LICENSE AGREEMENT

19.     In 2013, SDG began to cease making the monthly payments due to SweetFrog pursuant to Section 2 of the License Agreement and stopped reporting its sales to SweetFrog.

20.     On April 10, 2014, SweetFrog sent SDG and the Sciarettas, by overnight mail and email, a Notice of Default (the "Notice of Default") to the address for notice listed in the License Agreement.  A true and correct copy of the Notice of Default is attached as Exhibit 2.  The Notice of Default advised SDG that it was in default under the License Agreement for failing to pay amounts owed to SweetFrog (including late fees) since September 2013.  SweetFrog demanded that SDG pay the past due amounts immediately.  SDG was obligated to cure its defaults within fifteen (15) days of receipt of the Notice, or by April 26, 2014.

21.     On April 28, 2014, SweetFrog resent the Notice of Default to SDG at the address for the Shop because the Notice of Default sent to the notice address in the License Agreement had been returned as undeliverable.  In that letter, SweetFrog extended the deadline to cure to May 2, 2014.

22.     Thereafter, SDG failed to take any action to cure its monetary default.

23.     On August 14, 2014, SweetFrog sent SDG and the Sciarettas, by certified mail and email, a letter proposing that, in lieu of immediate termination for SDG's failure to cure its defaults, SDG and SweetFrog enter into a Termination Agreement.   Under the proposed Termination Agreement, SDG would be permitted to wind-down its business over thirty days and make all outstanding payments to SweetFrog including fees that had not been paid since the Notice of Default.  A copy of the August 14, 2014 letter and proposed termination agreement are attached as Exhibit 3.

24.     Subsequently, SDG and the Sciarettas proposed changes to the Termination Agreement, including requesting sixty days to wind-down the business and a waiver of past-due fees from September 2013 through August 2014.   SweetFrog responded, expressing a willingness to allow SDG to close by October 15, 2014 and to waive past-due amounts if SDG would execute the Termination Agreement and comply with its other contractual obligations. SDG never responded, the parties never consummated a Termination Agreement, and SDG never paid any of the amounts due to SweetFrog or otherwise cured its defaults.

25.     By letter dated October 31, 2014, SweetFrog notified SDG and the Sciarettas that the License Agreement was terminated (the "Notice of Termination").

## THE DEFENDANTS' BREACH OF THE
## POST-TERMINATION PROVISIONS OF THE LICENSE AGREEMENT
## AND UNAUTHORIZED USE OF THE SWEETFROG MARKS

26.     Pursuant to Section 11.3 of the License Agreement, upon termination, SDG expressly agreed that it would: (1) immediately cease operating the Shop as a SWEETFROG frozen yogurt shop; (2) discontinue all use of the SWEETFROG Marks, promotional materials, and trade dress; and (3) discontinue all sale, distribution, or advertising of Licensed Products.

27.     SDG also agreed in Section 12 of the License Agreement to refrain from using SweetFrog recipes, product preparation specifications, ingredients, and other proprietary and confidential processes ("Non-Public Information") after termination of the License Agreement.

28.     In addition, SDG agreed in Section 10.1 of the License Agreement that, for a period of five years following termination of the License Agreement, SDG would not open or operate a frozen yogurt business within a ten mile radius of any other location licensed to sell Licensed Products.

29.     As a consequence of the valid termination of the License Agreement, SDG is required to abide by these post-termination obligations.

30.     During a trip to Ohio in March 2015 to visit licensed and franchised SWEETFROG stores, SweetFrog discovered that SDG and the Sciarettas were continuing to operate the formerly licensed Shop using the SWEETFROG Marks, continuing to offer products at the Shop that are the same or similar to Licensed Products, and representing to customers that their products were Licensed Products.

31.     During that visit, SweetFrog also discovered that SDG and the Sciarettas had begun selling Licensed Products, or counterfeit Licensed Products, from a second location at the Chase Bank Corporate Office, 1121 Polaris Parkway, Columbus, Ohio (the "Second Shop") and were using the SWEETFROG Marks and trade dress in connection with operating the Second

Shop. Neither SDG nor the Sciarettas had been authorized to sell Licensed Products or use the SWEETFROG Marks or trade dress at the Second Shop, or any location other than the Shop, under the terms of the License Agreement. An employee of the Shop also advised SweetFrog that SDG and the Sciarettas were operating two additional locations (the "Other Locations") using the SWEETFROG Marks and selling products that were the same or similar to the Licensed Products. The addresses of these locations were not provided to SweetFrog.

32.     After SDG and the Sciarettas failed to respond to several voicemail messages from SweetFrog regarding their unauthorized use of the SWEETFROG Marks, on March 25, 2015, SweetFrog, through counsel, sent SDG and the Sciarettas, by Federal Express and email, a demand that SDG and the Sciarettas immediately cease and desist from all further use of the SWEETFROG Marks, trade dress, and other indicia of a legitimate SWEETFROG frozen yogurt shop either at the Shop, the Second Shop, or any other location and cease selling products that were the same or similar to the Licensed Products. SweetFrog notified SDG and the Sciarettas that their continued use of the SWEETFROG Marks, trade dress, and other proprietary features of SweetFrog, and their sale of counterfeit Licensed Products constituted trademark infringement, counterfeiting, unfair competition, and a violation of the post-termination obligations of the License Agreement.

33.     Despite SweetFrog's demands, SDG and the Sciarettas are continuing to operate the formerly licensed Shop, as well as the Second Shop and the Other Locations, using the SWEETFROG Marks and SweetFrog's trade dress, and are offering products at the Shop, the Second Shop, and the Other Locations that are the same or similar to the Licensed Products. SDG and the Sciarettas are advertising and holding themselves out to the public as a licensee of SWEETFROG authorized to sell Licensed Products, are representing that the frozen yogurt

products they are selling are Licensed Products, and are using SweetFrog's proprietary Non-Public Information to make the products.

34.     The defendants' failure to abide by the post-termination obligations required under the License Agreement and continued use of the SWEETFROG Marks, and other confidential and proprietary information belonging to SweetFrog in connection with the products that the defendants are offering at the site of the formerly licensed Shop, as well as at the Second Shop and the Other Locations, has caused, and is continuing to cause, irreparable harm to SweetFrog.

## COUNT ONE

### (Declaratory Judgment:  Termination of the License Agreement)

35.     SweetFrog realleges Paragraphs 1-34 of this Complaint.

36.     SDG has repeatedly defaulted in its obligations under the License Agreement.

37.     SweetFrog has provided SDG with written notice of its defaults.

38.     SDG failed to cure its defaults within the time periods specified in the License Agreement or within a reasonable amount of time after receiving written notice of those defaults.

39.     Because SDG has failed to cure its defaults within the period of time set forth in the License Agreement or at any time, SweetFrog had the right to terminate the License Agreement, and terminated that Agreement on October 31, 2014.   Notwithstanding the termination of its license to do so, SDG has continued to use the SWEETFROG Marks and to sell products that are the same as or similar to the Licensed Products at the Shop.

40.     An actual and justiciable controversy exists between SweetFrog and SDG regarding the termination of the License Agreement because SweetFrog asserts that the License Agreement has terminated as a result of SDG's defaults and failure to cure those defaults, while

SDG disputes that the License Agreement has terminated, as evidenced by its continued operation of the Shop.

41.     Pursuant to 28 U.S.C. §§ 2201 and 2202, SweetFrog seeks a declaratory judgment that the License Agreement has validly terminated in accordance with the provisions of that Agreement.

**COUNT TWO**

**(Breach of Contract - License Agreement)**

42.     SweetFrog realleges Paragraphs 1-41 of this Complaint.

43.     SDG's failure to pay royalty fees and interest on past-due amounts for the Shop constitutes a breach of the License Agreement.

44.     SweetFrog has been damaged by SDG's breach of the License Agreement in an amount to be proved at trial, but not less than $14,000, plus interest.

**COUNT THREE**

**(Breach of Contract - Post-Termination Obligations)**

45.     SweetFrog realleges Paragraphs 1-44 of this Complaint.

46.     Despite the valid termination of the License Agreement, SDG has failed to close and de-identify the Shop and to cease selling products that are the same as or similar to Licensed Products. Instead, SDG has continued to operate the Shop utilizing the SWEETFROG Marks in a manner likely to cause confusion or to deceive and which falsely suggests an association or connection with SweetFrog and that SDG is selling genuine Licensed Products, all in violation of Section 11 of the License Agreement.

47.     SDG has also breached the Section 11 of the License Agreement by continuing to use promotional materials, advertising, and trade dress displaying or associated with the SWEETFROG Marks.

48.     SDG has also breached Section 12 of the License Agreement by using SweetFrog's recipes, preparation specifications, ingredients, and other Non-Public Information in operating the formerly licensed Shop, the Second Shop, and the Other Locations without authorization after termination of the License Agreement.

49.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to SweetFrog, the SWEETFROG Marks and SWEETFROG frozen yogurt system.

50.     In addition, SweetFrog has sustained actual damages, costs, and attorneys' fees as a result of SDG's breach of the contractual post-termination obligations in an amount that has yet to be determined.

## COUNT FOUR

### (Breach of Contract – Lost Future Royalties)

51.     SweetFrog realleges Paragraphs 1-50 of this Complaint.

52.     As a result of SDG's default of its payment obligations under the License Agreement and the termination of the License Agreement, SDG is in breach of its obligation to pay SweetFrog a minimum monthly royalty fee for the full term of the License Agreement, which was due to expire in February 2022.

53.     SweetFrog has been damaged by SDG's breach of the License Agreement in an amount to be proved at trial, but not less than $87,000.

## COUNT FIVE

### (Declaratory Judgment – Post-Termination Covenant Not To Compete)

54.     SweetFrog realleges Paragraphs 1-53 of this Complaint.

55.     In Section 10.1 of the License Agreement, SDG agreed not to operate a similar business to the SWEETFROG Shop within a ten-mile radius of any other retail store licensed to sell Licensed Products for a period of five years after termination of the License Agreement.

56.     SDG has asserted that its operation of self-serve frozen yogurt machines in locations owned by third parties, (which is how SDG and the Sciarettas operate the Second Shop and the Other Locations), regardless of proximity to a SWEETFROG retail store selling Licensed Products, is not a similar business and not a breach of Section 10.1 of the License Agreement.

57.     SweetFrog is unaware of the locations of the Other Locations, which may be within a ten-mile radius of existing SWEETFROG retail stores.

58.     An actual and justifiable controversy exists between SweetFrog and SDG regarding whether or not SDG's operation of self-serve yogurt machines at locations owned by third parties is a "similar business", which, if located within a ten-mile radius of a SWEETFROG retail store, would constitute a breach of Section 10.1 of the License Agreement.

59.     Pursuant to 28 U.S.C. §§ 2201 and 2202, SweetFrog seeks a declaration that the aforementioned operation constitutes a "similar business" and a breach of the License Agreement.

## COUNT SIX

### (Trademark, Service Mark and Trade Dress Infringement)

60.     SweetFrog realleges Paragraphs 1-59 of this Complaint.

61.     SDG's and the Sciarettas' use of the SWEETFROG Marks without authorization or license from SweetFrog is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the SWEETFROG Marks.

62.     Consumers are likely to believe, contrary to fact, that SDG and the Sciarettas are authorized licensees of SweetFrog; that the Shop, the Second Shop, and the Other Locations are legitimate SWEETFROG shops; and that the frozen yogurt and other products sold by SDG and the Sciarettas are genuine and authentic Licensed Products.

63.     SDG and the Sciarettas are willfully, intentionally, and knowingly using trademarks, service marks, trade dress and designations that are identical to, substantially indistinguishable from, or confusingly similar to the SWEETFROG Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

64.     The Sciarettas are causing SDG to engage in this infringing activity and, to the extent not directly liable, are contributory infringers in violation of the Lanham Act.

65.     The defendants' conduct is causing irreparable injury to SweetFrog's reputation and goodwill, which will continue unabated unless enjoined by this Court.

66.     In addition, the defendants' conduct is causing monetary damage to SweetFrog in an amount to be proved at trial.

## COUNT SEVEN

### (Federal Trademark Counterfeiting)

67.     SweetFrog realleges Paragraphs 1-66 of this Complaint.

68.     The defendants' use of the mark "SWEETFROG," which is identical to, or substantially indistinguishable from the SWEETFROG Marks, in connection with frozen yogurt products that are the same or substantially similar to the Licensed Products is willful and malicious, has caused, and is likely to continue to cause, confusion with the actual

SWEETFROG Marks and the Licensed Products, and constitutes the use of a counterfeit mark as that term is defined in 28 U.S.C. § 1116(d).

69.     The defendants' conduct has caused and is causing irreparable injury and damage to SweetFrog and the SWEETFROG Marks, in violation of Section 32 of the Lanham Act, 28 U.S.C. § 1114.

70.     The Sciarettas are causing SDG to engage in this counterfeiting activity and, to the extent not directly liable, are liable to the same extent as SDG under the Lanham Act.

71.     The defendants' conduct is causing irreparable injury to SweetFrog's reputation and goodwill, which will continue unabated unless enjoined by this Court.

72.     In addition, the defendants' conduct is causing monetary damage to SweetFrog in an amount to be proven at trial.

## COUNT EIGHT

### (Federal Unfair Competition)

73.     SweetFrog realleges Paragraphs 1-72 of this Complaint.

74.     The defendants' unauthorized use of the SWEETFROG Marks and trade dress, holding themselves out as duly licensed SweetFrog licensees, and representations that their frozen yogurt products are genuine and authentic Licensed Products, constitute false designation of origin, false advertising, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between the defendants and SweetFrog, or as to the origin, sponsorship, or approval of the goods or services being offered by the defendants, or as to SweetFrog's approval of the defendants' commercial activities.

75.     The defendants' conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

76.     The Sciarettas are causing SDG to engage in this activity and, to the extent not directly liable, are liable to the same extent as SDG under the Lanham Act.

77.     The defendants' conduct is causing irreparable injury to SweetFrog's reputation and goodwill, which will continue unabated unless enjoined by this Court.

78.     In addition, the defendants' conduct is causing monetary damage to SweetFrog, in an amount to be proven at trial.

## COUNT NINE

### (State Law, Trademark and Service Mark Infringement)

79.     SweetFrog realleges Paragraphs 1-78 of this Complaint.

80.     The SWEETFROG Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the SWEETFROG Marks as identifying the Licensed Products and the operation of frozen yogurt shops by SWEETFROG and its franchisees and licensees.  The SWEETFROG Marks have become known by the public as indicative of the goods and services provided by Sweetfrog, and SWEETFROG franchisees and licensees, at SWEETFROG frozen yogurt shops.

81.     The public is likely to be confused, deceived, or otherwise manipulated by the defendants' unauthorized use of the SWEETFROG Marks.  Therefore, the defendants' use of the SWEETFROG Marks without right, license, or authorization constitutes trademark and service mark infringement under the laws of the Commonwealth of Virginia.

82.     The Sciarettas are causing SDG to engage in this infringing activity and, to the extent not directly liable, are liable to the same extent as SDG for this infringing activity.

83.     The defendants' conduct is causing irreparable injury to SweetFrog's reputation and goodwill, which will continue unabated unless enjoined by this Court.

84.     In addition, the defendants' conduct is causing monetary damage to SweetFrog, in an amount to be proven at trial.

## COUNT TEN

### (State Law Unfair Competition)

85.     SweetFrog realleges Paragraphs 1-84 of this Complaint.

86.     The defendants' conduct constitutes unfair competition under applicable state law.

87.     The Sciarettas are causing SDG to engage in this activity and, to the extent not directly liable, are liable to the same extent as SDG for this activity.

88.     The defendants' conduct is causing irreparable injury to SweetFrog's reputation and goodwill, which will continue unabated unless enjoined by this Court.

89.     In addition, the defendants' conduct is causing monetary damage to SweetFrog, in an amount to be proven at trial.

## COUNT ELEVEN

### (Unjust Enrichment)

90.     SweetFrog realleges Paragraphs 1-89 of this Complaint.

91.     The defendants' unauthorized use of the SWEETFROG Marks in operating the Shop, the Second Shop, and the Other Locations and holding themselves out as duly licensed SWEETFROG licensees has resulted in the unjust enrichment of the defendants in an amount that has yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE,** SweetFrog demands entry of judgment in their favor awarding the following relief:

1.      Declaring that the License Agreement has terminated and that the termination of that Agreement was lawful and valid;

2.      Declaring that the operation of self-serve yogurt machines at locations owned by third parties, which locations are within a ten-mile radius of a SWEETFROG shop, constitutes a breach of the License Agreement;

3.      Awarding SweetFrog the amounts owed under the License Agreement in an amount to be proved at trial but, which amount is no less than $14,000, plus interest, under the terms of the License Agreement through the date of entry of judgment;

4.      Awarding SweetFrog its damages resulting from the defendants' breach of the post-termination obligations of the License Agreement, in an amount to be proved at trial;

5.      Preliminarily and permanently enjoining the defendants, and all those acting in concert or privity with any or all of them, including any of their agents, servants, employees, and attorneys, from:

      (a)      using the SWEETFROG Marks, trade dress, and Non-Public Information, in any manner whatsoever, including, without limitation, in connection with the advertising, promotion or sale of any product or service, and including, without limitation, all signs, furniture, fixtures, equipment, décor, advertising materials, stationary, forms, and any other articles that display the SWEETFROG Marks;

      (b)      operating any business or selling any goods or services under the name SWEETFROG or operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that any business in which the defendants have any interest or connection is licensed by SWEETFROG or otherwise associated with the SWEETFROG frozen yogurt system;

      (c)      failing to make any changes and alterations to their formerly-licensed Shop and to the Second Shop and the Other Locations required to de-identify the businesses;

      (d)      committing any other act that infringes the SWEETFROG Marks, trade dress, or Non-Public Information or otherwise unfairly competes with SweetFrog or the SWEETFROG frozen yogurt system.

6.     Ordering the defendants to file with the Court and serve on counsel for SweetFrog, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

7.     Awarding SweetFrog, pursuant to 15 U.S.C. §1117, (a) the defendants' profits, (b) SweetFrog's damages, and (c) the costs of the action or awarding Sweetfrog statutory damages pursuant to 5 U.S.C. § 1117(c);

8.     Awarding SweetFrog treble damages and attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

9.     Ordering specific performance against SDG of the post-termination obligations in the License Agreement;

10.     Awarding SweetFrog the amount by which the defendants have been unjustly enriched by their conduct;

11.     Awarding SweetFrog its costs in prosecuting these claims, including its reasonable attorneys' fees incurred, in accordance with the License Agreement and applicable law; and

12.     Such other and further relief as the Court may deem appropriate.

Benjamin B. Reed (VA Bar No. 78190)
PLAVE KOCH PLC
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia  20191
703-774-1200 (phone)
703-774-1201 (fax)
breed@plavekoch.com

*Attorneys for Plaintiff SweetFrog Enterprises, LLC*

May 1, 2015